## NIKOLAS v PATRICK

1. Courts—Circuit Courts—Scope of Review—Findings of Fact—
   Court Rules—Statute.

   A circuit court did not err when it reversed a decision of the
   Common Pleas Court where the circuit court's ruling on the
   law as it applied to the facts was in accord with the court rules
   and statute on the circuit court's scope of review and the
   procedures to be followed (MCLA 728.4; GCR 1963, 705).

2. Liens—Warehouseman's Lien—Bailor.

   A warehouseman's lien may be effective against a person other
   than the bailor in certain circumstances, but such circum-
   stances will not be expanded by interpretation when such is not
   in accord with sound statutory construction, with legislative
   intent, or with prior case law.

3. Liens—Warehouseman's Lien—Bailee—Duty to Debtor—Docu-
   ment of Title—Statutes.

   The section of the Uniform Commercial Code covering the duty of
   a warehouseman-bailee to deliver to a person entitled under a
   document of title will not be construed to force the true owner,
   in his capacity as owner, to pay the warehouseman's claimed
   charges where the facts do not involve a person claiming
   through a document of title, and where such construction is
   contrary to the import of other code sections (MCLA 440.7209,
   440.7403).

4. Liens—Owner of Goods—Acquiescence in Lien—Demand.

   An owner of goods did not acquiesce in the retention of the goods
   by a warehouseman and thereby subject the goods to a ware-
   houseman's lien by allowing the goods to remain in the ware-
   house after the owner had refused to pay the charges de-
   manded by the warehouseman where the warehouseman did

---

References for Points in Headnotes

[1] 20 Am Jur 2d, Courts §§ 82–86.
   Power of court to prescribe rules of pleading, practice, or procedure,
   158 ALR 715.
[2] 56 Am Jur, Warehouses § 11.
[3, 4] 56 Am Jur, Warehouses § 192.

not have a lien effective against the owner when the demand for the charges was made.

Appeal from Wayne, Edward F. Bell, J. Submitted Division 1 December 11, 1973, at Detroit. (Docket No. 14685.) Decided March 4, 1974.

Complaint by Anna Nikolas and Thomas Nikolas against Edgar D. Patrick, doing business as Livernois Moving & Storage Company, for replevin in Common Pleas Court. Judgment for defendant. Plaintiff appealed to circuit court. Reversed. Defendant appeals by leave granted. Affirmed.

*Arthur Rubin,* for plaintiffs.

*Clarence T. Wilson (C. Thomas Wilson,* of counsel), for defendant.

Before: LESINSKI, C. J., and BASHARA and VAN VALKENBURG,* JJ.

LESINSKI, C. J. Defendant Edgar D. Patrick appeals a decision of the circuit court which reversed the Common Pleas Court judgment in favor of defendant in a replevin action brought by the plaintiffs. Leave to appeal was granted and the decision of the circuit court is herein affirmed.

The transaction underlying plaintiffs' replevin action began in July, 1966. Plaintiffs contacted Secured Moving, Inc. for the purpose of having some of their furniture stored. Some time after the plaintiffs' furniture was stored, Secured Moving decided to terminate its operations.

To expedite the winding down of the corporation, Frank Collins, an agent of Secured Moving, negotiated with Edgar D. Patrick, the owner of a

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

warehouse business under the name of Livernois Moving & Storage Co. (hereinafter referred to as Livernois). Without any notification to the plaintiffs, Collins made an agreement with Patrick to move the stored goods from Secured Moving's warehouse and to store them in Collins' name, under a nonnegotiable Livernois warehouse receipt. About three months later, on June 25, 1969, the plaintiffs demanded the return of their furniture from Secured Moving. Collins refused to give them any information until their storage bill was paid. Plaintiffs paid the bill, $775, and were informed that Livernois had their goods.

The plaintiffs then went to Livernois and were told that the goods would not be released until further moving and storage charges were paid. The charge for moving the goods from Secured's warehouse to Livernois' was about $400 and the storage charges were $80.50 per month. The plaintiffs refused to pay, filed suit against Collins, and began a replevin action against Patrick of Livernois when he threatened to sell the goods to satisfy his claimed warehouse lien.

Two issues are now raised by the defendant. The first is that the circuit court erred because it allegedly made new findings of fact in a situation where it did not have an opportunity to view the witnesses and where the evidence introduced did not clearly preponderate against the findings of fact made by the Common Pleas Court.

A review of the record does not support the defendant's position. The Common Pleas Court had held as a matter of law, not fact, that both plaintiffs and defendant had been at fault in allowing the goods to be moved without plaintiffs' permission and that defendant had a valid warehouseman's lien on the goods. The circuit court, after

receiving briefs from both sides and after examining the lower court record, concluded that the applicable law necessitated a result contrary to that reached by the lower court. This ruling on the law as it applied to the facts is in accord with the court rules and statute on the circuit court's scope of review and the procedure to be followed. GCR 1963, 705; MCLA 728.4; MSA 27.3654.

The second issue is whether the circuit court was correct when it ruled that defendant did not have an enforceable warehouse lien against the plaintiffs' property. Several different theories are advanced in support of defendant's position and, although we conclude that the plaintiff should prevail, each of these theories deserves individual attention.

Defendant first cites the provision of Michigan law which governs the existence, extent, effectiveness, and loss of warehouseman's liens:

"(1) A warehouseman has a lien against the bailor on the goods covered by a warehouse receipt or on the proceeds thereof in his possession for charges for storage or transportation (including demurrage and terminal charges), insurance, labor, or charges present or future in relation to the goods, and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law. If the person on whose account the goods are held is liable for like charges or expenses in relation to other goods whenever deposited and it is stated in the receipt that a lien is claimed for charges and expenses in relation to other goods, the warehouseman also has a lien against him for such charges and expenses whether or not the other goods have been delivered by the warehouseman. But against a person to whom a negotiable warehouse receipt is duly negotiated a warehouseman's lien is limited to charges in an amount or at a rate specified on the receipt or if no charges are so specified then to a

reasonable charge for storage of the goods covered by the receipt subsequent to the date of the receipt.

"(2) The warehouseman may also reserve a security interest against the bailor for a maximum amount specified on the receipt for charges other than those specified in subsection (1), such as for money advanced and interest. Such a security interest is governed by the article on secured transactions (article 9).

"(3) A warehouseman's lien for charges and expenses under subsection (1) or a security interest under subsection (2) is also effective against any person who so entrusted the bailor with possession of the goods that a pledge of them by him to a good faith purchaser for value would have been valid *but is not effective against a person as to whom the document confers no right in the goods covered by it under section 7503.*

"(4) A warehouseman loses his lien on any goods which he voluntarily delivers or which he unjustifiably refuses to deliver." MCLA 440.7209; MSA 19.7209 (hereinafter referred to as 7209). (Emphasis supplied.)

Since subsections (1) and (2) of this section apply to liens against the bailor (here, Secured Moving) and since the lien alleged here is against the owners of the goods, the defendant directs our attention primarily to subsection (3). This subsection establishes that a warehouseman's lien may be effective against a person other than the bailor in certain circumstances. The defendant urges that such circumstances are present in the instant case and supports his argument by drawing negative implications from subsection 7209(3) and from 7503 which is cited in 7209(3).

Section 7503 provides:

"(1) *A document of title confers no right in goods against a person who before issuance of the document had a legal interest* or a perfected security interest in them *and who neither*

"(a) *delivered or entrusted them* or any document of title covering them *to the bailor or his nominee with*

*actual or apparent authority to* ship, *store,* or sell or with power to obtain delivery under this article (section 7403) or with power of disposition under this act (sections 2403 and 9307) or other statute or rule of law; *nor*

"(b) *acquiesced in the procurement by the bailor or his nominee of any document of title.*

"(2) Title to goods based upon an unaccepted delivery order is subject to the rights of anyone to whom a negotiable warehouse receipt or bill of lading covering the goods has been duly negotiated. Such a title may be defeated under the next section to the same extent as the rights of the issuer or a transferee from the issuer.

"(3) Title to goods based upon a bill of lading issued to a freight forwarder is subject to the rights of anyone to whom a bill issued by the freight forwarder is duly negotiated; but delivery by the carrier in accordance with part 4 of this article pursuant to its own bill of lading discharges the carrier's obligation to deliver." MCLA 440.7503; MSA 19.7503. (Emphasis added.)

Defendant's combined negative implication of the above underlined sections would be that a warehouse lien on goods is effective against a person with a legal interest in them who has either entrusted them to the bailor with actual or apparent authority to store them or has acquiesced in the procurement by the bailor of a document of title covering them.

If the defendant is correct in his interpretation of the second part of 7209(3), then its broad import would not only cover the limited situation mentioned in the first part but would also cover many other situations as well. Thus rendering the first part of the subsection superfluous is not in accord with sound statutory construction.

Such an interpretation is also not the intent of the Legislature as manifested by their subsequent actions. In 1966 the editorial board of the Uniform Commercial Code amended subsection 7209(3). This amendment, which explicitly expands the

application of 7209(3), has not been adopted by the Michigan Legislature. Since the amended section would have been less of an expansion than that advocated by the defendant, the Legislature's refusal to act is a clear indication that they did not intend the interpretation urged by the defendant.

Prior cases both under Michigan precode law and under the Uniform Commercial Code as enacted in Michigan likewise support this conclusion. In a case arising out of precode law, a sheriff had attached certain personal property and stored it with a warehouseman. After the attachment was dismissed, the owner sought possession of the property and the warehouseman asserted a lien. The Court said that a lien provided by statute is general, but, being statutory, must be strictly construed. The Court then held that the storage company was not entitled to a lien since the sheriff had no power to create one. *Roehl Storage Co v Wilson,* 268 Mich 691; 256 NW 598 (1934).

Under a code section similar to that adopted in Michigan, a plaintiff had entrusted a painting to another for the limited purpose of exhibiting the painting. While in the second person's hands, a claim was made against the painting and it was put in storage. The court concluded that under such circumstances, the warehouseman did not have a lien under 7209 that would be effective against the owner of the painting. *Republic of Austria v H G Ollendorff, Inc,* 7 UCC Rpting Serv 535 (1970). Both *Roehl* and *Republic of Austria* are persuasive authority for the conclusion that the defendant's theory is not correct.*

Defendant next argues from the statutory sec-

---

\* *See also Farrell v Harlem Terminal Storage Warehouse Co,* 70 Misc 565; 127 NYS 306 (1911), for a like result on facts close to those of the instant case.

tion covering the bailee's duty to deliver to a person entitled under a document of title. That section provides:

"(1) The bailee must deliver the goods to a person entitled under the document who complies with subsections (2) and (3), * * *

"(2) A person claiming goods covered by a document of title must satisfy the bailee's lien where the bailee so requests or where the bailee is prohibited by law from delivering the goods until the charges are paid." MCLA 440.7403; MSA 19.7403.

The facts of the instant case, however, do not involve a person claiming through a document of title; here, rather, the true owner of the goods is claiming them in his capacity as owner. If this section is construed to force the true owner to pay, then the warehouse lien has been made effective against him which is contrary to the import of 7209 as discussed above. We conclude, therefore, that 7403 should not be construed as urged by defendant.

Finally, defendant urges that the owners of the goods, by allowing the goods to remain in the warehouse after they had refused to pay the charges demanded by the defendant, had acquiesced in the retention of the goods by the subwarehouseman and thereby subjected the goods to his lien. In light of what has already been said, it is sufficient to note that defendant did not have a lien effective against the owners when the demand was made. The goods remained in the warehouse not because of the owners' acquiescence but because of defendant's refusal to deliver.

Therefore, since the statutory provisions cited by the defendant do not support his position and since the defendant has advanced no other princi-

ples of law, equity, or business practice which would establish his conduct as commercially reasonable, the ruling of the circuit court reversing the judgment of the Common Pleas Court is affirmed.

Affirmed. Costs to plaintiffs.

All concurred.