Jane E. **KELLENBERGER**, Appellant,

v.

**BOB MEYERS MOVING & STORAGE CO., INC., a domestic corporation, Virginia Meyers and Joe Barnard, Individuals, Appellees.**

No. 51772.

Court of Appeals of Oklahoma, Division No. 1.

May 8, 1979.

As Corrected May 16, 1979.

Released for Publication by Order of Court of Appeals June 7, 1979.

Joseph LeDonne, Jr., Tulsa, for appellant.

Garrison, Pigman, Comstock & Thurston by Mark O. Thurston, Tulsa, for appellees.

BOX, Judge:

An appeal by Jane E. Kellenberger, plaintiff below, from a judgment in favor of Bob Meyers Moving & Storage Company, Inc., defendant below, in an action for conversion.

Most of the facts crucial to the outcome of this appeal are undisputed. In January 1972 the plaintiff, who had been evicted from the house she was renting, stored most of her worldly possessions with the defendant. Her property included household goods and furnishings for a 6-room house, appliances, furniture, office equipment, clothing, and personal momentos, and had a value of $14,250. From January 1972 through August 1972 she was unemployed and did not pay any of the storage fees. In April 1972 the defendant allowed her to retrieve some clothing and a filing cabinet. In July 1972 the defendant mailed her a letter informing her that if she did not pay the account by August 2, 1972, her property would be sold by auction on August 12, 1972, at 10:00 a. m. The letter was accompanied by a "Final Notice of Sale" and a 7-page inventory of the property held. Being unable to borrow the money she needed from a bank or to prevail upon the defendant to give her more time, the plaintiff finally borrowed the money from a friend. She presented the check on August 12, a Saturday, at approximately 12:40 p. m., and presented it twice again the next week, but the defendant refused to accept it, saying that the property had already been sold. It turns out that the defendant itself bought the property at its auction for the amount of the charges owed, and then later resold the property. The plaintiff later returned the check to her friend, and in October 1973 she brought this action in conversion.

The plaintiff originally filed this action against the defendant corporation and three individuals, one of whom was deceased. Service was never proper as to the deceased

individual, and the trial court sustained demurrers to the plaintiff's evidence against the other two individuals, from which the plaintiff does not appeal. Therefore we are only concerned with the corporate defendant.

A non-jury trial was held on September 28, 1977. At the trial the defendant corporation demurred to the plaintiff's evidence. The trial court overruled the demurrer, and the defendant rested without putting on any testimony. After closing argument by counsel for the parties, the trial court rendered judgment for the defendant. The court found that the defendant had complied with the notice requirements of the Uniform Commercial Code and that the plaintiff had not shown that she had tendered the payment before the sale took place on August 12, 1972. For the reasons set out below, we find that the defendant did not comply with the Uniform Commercial Code requirements, and we find it unnecessary to consider whether the sale that took place on August 12, 1972, did so before or after her tender of payment at 12:40 p. m. on that day.

■ We first must consider the defendant's contention that the plaintiff is not the real party in interest in this lawsuit. When she borrowed the money to pay the defendant from a friend, the plaintiff and her friend executed an agreement whereby she "sold or assigned" all of her "rights and ownership" in the property to her friend. The agreement provided that "[a]ll future storage and expenses [are] to be paid by the purchaser until satisfactory settlement is made in full, at which time ownership reverts to Janie E. Kellenberger." We find that the effect of this agreement was not to sell the goods, but rather merely to grant a security interest in them to the plaintiff's friend. 12A O.S.1971, § 9–102(2) and U.C.C. Comment 1; 12A O.S.1971, § 1–201(37). Therefore the plaintiff is the real party in interest and is entitled to prosecute this action.

■ The defendant in this case had a lien on the plaintiff's property by operation of law for storage, transportation, and like charges. 12A O.S.1971, § 7–209(1). To enforce that lien, however, the defendant was required to follow the procedures of 12A O.S.1971, § 7–210. Section 7–210 provides a simple enforcement method with a "commercially reasonable" standard for goods stored by a merchant in the course of his business, but has a strict set of requirements that must be followed for goods stored by a consumer. Section 7–210(2) provides:

(2) A warehousemen's lien on goods other than goods stored by a merchant in the course of his business *may be enforced only as follows*:

(a) All persons known to claim an interest in the goods must be notified.

(b) The notification must be delivered in person or sent by registered letter to the last known address of any person to be notified.

(c) The notification must include an itemized statement of the claim, a description of the goods subject to the lien, a demand for payment within a specified time not less than ten days after receipt of the notification, and a conspicuous statement that unless the claim is paid within that time the goods will be advertised for sale and sold by auction at a specified time and place.

(d) The sale must conform to the terms of the notification.

(e) The sale must be held at the nearest suitable place to that where the goods are held or stored.

(f) After the expiration of the time given in the notification, an advertisement of the sale must be published once a week for two weeks consecutively in a newspaper of general circulation where the sale is to be held. The advertisement must include a description of the goods, the name of the person on whose account they are being held, and the time and place of the sale. The sale must take place at least fifteen days after the first publication. If there is no newspaper of general circulation where the sale is to be held, the advertisement must be

posted at least ten days before the sale in not less than six conspicuous places in the neighborhood of the proposed sale. [Emphasis added.]

The reason for strict requirements is that "[n]onvariable rules prevent storers and transporters from over-reaching their customers and from discriminating between them." J. White & R. Summers, *Uniform Commercial Code* § 20–2, at 670. In *Flores v. Didear Van & Storage Co.*, 489 S.W.2d 406, 409 (Tex.Ct.App. 1972), the Court of Civil Appeals of Texas held:

A warehouseman has no personal remedy for selling property for collection of charges at common law. His remedy lies by foreclosure as is provided by statutory law. The enforcement of such lien under summary foreclosure procedures, must be accomplished in strict compliance with the terms of the statute upon which such power is granted. [Citations omitted.] The letter notifying Flores of the impending sale failed to comply with the requirement of the code which says that ten days notice *"must"* be given to the owner within which time he could pay for the goods. [Emphasis in original.]

In the case before us the defendant mailed notice to the plaintiff on July 19, 1972. The record shows that the plaintiff received it on July 26, 1972. The notice demanded payment on or before August 2, 1972. That allowed only seven days to pay, and failed to comply with the requirement of section 7–210(2)(c) that the notice include "a demand for payment within a specified time *not less than ten days after receipt of the notification*." (Emphasis added.) On the third and tenth of August the defendant published a notice of the sale in the Tulsa Daily Legal News. An advertisement of the sale is required by section 7–210(2)(f) "[a]fter the expiration of the time given in the notification." Since the notice did not give the plaintiff the required ten days to pay, and since ten days from the receipt of notice would have been August 5, 1972, the publication commenced on August 3 was improper. Finally, the record shows that the sale was conducted at

some time on August 12, 1972, nine days after the defendant's first publication, which itself was done too early. This made the date of the sale improper, since section 7–210(2)(f) requires that "[t]he sale must take place *at least fifteen days after the first publication*." (Emphasis added.) For these reasons the defendant's sale of the plaintiff's personal property was improper and wrongful.

■ Under older statutes, Oklahoma courts have always held that wrongful sales by warehousemen for charges constitute conversion. *King Transfer & Storage Co. v. Larson*, Okl., 263 P.2d 164; *Roberts v. Callis*, 177 Okl. 359, 58 P.2d 1232; *Page v. Allison*, 173 Okl. 205, 47 P.2d 134. The same result has been reached under Article 9 of the Uniform Commercial Code when a secured party makes a wrongful sale. In *Davidson v. First Bank & Trust Co.*, 559 P.2d 1228, 1233, the Supreme Court held:

A secured party who repossesses (and sells) without judicial action subjects himself to liability for any tortious conduct. [Citing *Southern Industrial Savings Bank v. Greene*, 224 So.2d 416 (Fla.Dist.Ct.App. 1969).]

We hold that the sale of a consumer's stored property to enforce a warehouseman's lien, without complying with the requirements of Article 7 of the Uniform Commercial Code, is a conversion. Other state courts have reached this same conclusion. *Suddath Moving & Storage Co. v. Roure*, 276 So.2d 549 (Fla.Dist.Ct.App. 1973); *Flores v. Didear Van & Storage Co., supra.*

The trial court erred in finding that the defendant complied with the requirements of Article 7 in selling the plaintiff's property. Since the evidence in this action is uncontroverted, leaving only questions of law, which we have decided, we will reverse the judgment with directions to enter judgment for the plaintiff. *Cities Service Oil Co. v. Geolograph Co.*, 208 Okl. 179, 254 P.2d 775. The plaintiff originally sought, but now has abandoned any claim for, exemplary and other damages. We therefore direct the trial court to enter judgment for the

plaintiff in the amount of $14,250, the value of her property at the time of the conversion, with interest thereon. 23 O.S.1971, § 64; *Hamco Oil & Drilling Co. v. Ervin*, Okl., 354 P.2d 442. Interest is to be assessed at the rate of 6% per annum from the date of conversion, August 12, 1972, until the date judgment was entered for the defendant, September 28, 1977. 15 O.S. 1971, § 266. Since we are directing entry of the judgment that should have been awarded to the plaintiff below, interest is to be assessed at the rate of 10% per annum from September 28, 1977. 12 O.S.1971, § 727; *see Missouri-Kansas-Texas Railroad v. Ed-* *wards*, Okl., 401 P.2d 303 and 306; *cf. Stone v. Currigan*, 138 Colo. 442, 334 P.2d 740 (1959) (en banc).

REVERSED WITH DIRECTIONS.

ROMANG, P. J., and REYNOLDS, J., concur.