SCOTT v HURD-CORRIGAN MOVING & STORAGE CO, INC

Docket No. 78-3313. Submitted March 10, 1980, at Lansing.—Decided February 3, 1981. Leave to appeal applied for.

Robert A. Scott brought an action against Hurd-Corrigan Moving & Storage Co., Inc. for breach of a bailment contract. Washtenaw Circuit Court, Edward D. Deake, J., entered judgment for defendant. Plaintiff appeals, alleging that the trial court erred in instructing the jury that a certain provision of the Uniform Commercial Code applied, in failing to grant plaintiff's motion for summary judgment on the issue of liability, in denying plaintiff's motion for a directed verdict on the issue of conversion, in allowing plaintiff to be cross-examined regarding his involvement in prior criminal and civil actions, in admitting extrinsic evidence to attack plaintiff's credibility, and in with-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 78 Am Jur 2d, Warehouses §§ 116, 118, 122, 123.

[3] 67 Am Jur 2d, Sales §§ 14, 15.
 78 Am Jur 2d, Warehouses § 123.

[4] 15A Am Jur 2d, Commercial Code §§ 3, 23.
 Construction and effect of UCC Art 7, dealing with warehouse receipts, bills of lading, and other documents of title. 21 ALR3d 1339.

[5] 78 Am Jur 2d, Warehouses §§ 124, 125.

[6, 7] 78 Am Jur 2d, Warehouses § 258.

[8] 29 Am Jur 2d, Evidence § 339 *et seq.*

[9] 29 Am Jur 2d, Evidence §§ 336-338.

[10] 37 Am Jur 2d, Fraud and Deceit §§ 456, 457.

[11] 81 Am Jur 2d, Witnesses § 587.
 Impeachment of witness by evidence or inquiry as to arrest, accusation, or prosecution. 20 ALR2d 1421.

[12, 14] 29 Am Jur 2d, Evidence §§ 251, 252.

[13] 81 Am Jur 2d, Witnesses § 587.

[15] 29 Am Jur 2d, Evidence § 341.
 81 Am Jur 2d, Witnesses § 668.

[16] 22 Am Jur 2d, Damages §§ 167, 168, 361, 362.

[17] 22 Am Jur 2d, Damages §§ 167, 168.
 Attorneys' fees or other expenses of litigation as element in measuring exemplary or punitive damages. 30 ALR3d 1443.

[18] 22 Am Jur 2d, Damages § 245.

holding the amount of plaintiff's attorney fees from the jury.
*Held:*

1. The trial court erred in determining that the section of the Uniform Commercial Code which prescribed the procedure for a warehouseman to follow in the foreclosure of a lien against a merchant-bailor storing goods in the course of his business applied in this case. Plaintiff is not a merchant as defined by the Code, and the goods which defendant stored were personal and household goods.

2. Defendant failed to comply with the explicit notice requirements of the applicable section of the Code, and plaintiff was thus entitled to summary judgment as a matter of law on the issue of liability.

3. The trial court properly denied plaintiff's motion for a directed verdict that defendant was guilty of conversion.

4. The cross-examination of plaintiff, while prejudicial, was properly allowed since its probative value on the issue of damages outweighed its prejudicial effect.

5. The trial court erred in admitting testimony of a witness for the purpose of rebutting plaintiff's testimony by extrinsic evidence.

6. The trial court correctly exercised its discretion in denying plaintiff's motion to submit the amount of his attorney fees to the jury.

Reversed and remanded.

1. WAREHOUSEMEN — BAILMENTS — LIENS — ENFORCEMENT OF LIENS — STATUTES.

A warehouseman has a lien against a bailor for goods covered by a warehouse receipt for charges for storage, transportation, and insurance of, labor relating to, and expenses incurred in any legally valid sale of such goods, and the lien may be enforced by public or private sale (MCL 440.7209, 440.7210; MSA 19.7209, 19.7210).

2. WAREHOUSEMEN — BAILMENTS — LIENS — ENFORCEMENT PROCE-DURES — STATUTES.

The procedure to be followed by a warehouseman to enforce a lien against a bailor for goods covered by a warehouse receipt is determined by the nature of the bailor and not that of the bailee; the requirements which apply to a merchant-bailor are relatively flexible and are based on a commercially reasonable standard and the requirements which apply to a nonmerchant-bailor are strict and rigid (MCL 440.7210; MSA 19.7210).

3. Warehousemen — Merchant-Bailors — Words and Phrases — Enforcement of Liens — Statutes.

A merchant for the purpose of applying the statutory provisions for enforcement by a warehouseman of a lien against a bailor for goods covered by a warehouse receipt is a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in a transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill, but a warehouseman is not a merchant (MCL 440.2104[1], 440.7209, 440.7210; MSA 19.2104[1], 19.7209, 19.7210).

4. Courts — Foreign Judicial Decisions — Uniform Commercial Code — Persuasive Authority — Statutes.

Decisions of courts of other states which interpret the provisions of the Uniform Commercial Code are persuasive authority in Michigan since one of the purposes of the Code is to make uniform the law among various jurisdictions (MCL 440.1102; MSA 19.1102).

5. Warehousemen — Nonmerchant-Bailors — Enforcement of Liens — Uniform Commercial Code — Summary Judgment — Statutes.

Failure by a warehouseman to comply with the strict notice requirements of the Uniform Commercial Code relative to the enforcement of a lien against a nonmerchant-bailor for goods covered by a warehouse receipt renders a sale of the goods void, and, in an action by the bailor for damages resulting from the unlawful enforcement of such a lien, the bailor is entitled to summary judgment as a matter of law on the issue of liability (MCL 440.7210[2]; MSA 19.7210[2]).

6. Warehousemen — Bailments — Uniform Commercial Code — Conversion — Statutes.

A warehouseman is liable for damages caused by his failure to comply with the requirements of the Uniform Commercial Code for sale of goods covered by a warehouse receipt for enforcement of a lien against the bailor of the goods, and, in a case of wilful violation of the requirements, the warehouseman is liable for conversion (MCL 440.7210[9]; MSA 19.7210[9]).

7. Warehousemen — Uniform Commercial Code — Conversion — Wilful Violation of Statutes — Statutes.

A wilful violation of the provisions of the Uniform Commercial

Code pertaining to enforcement of warehousemen's liens against bailors of goods covered by a warehouse receipt which renders a warehouseman liable for conversion implies a knowing, conscious noncompliance with the provisions of the Code or a deliberate unwillingness to discover and obey the law (MCL 440.7210[9]; MSA 19.7210[9]).

8. Evidence — Character Evidence — Bad-Acts Evidence — Admissibility of Evidence — Rules of Evidence.

Character evidence generally is inadmissible to prove a party's conduct in a present action, but evidence of a party's other bad acts may be admissible to prove motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when material (MRE 404).

9. Evidence — Character Evidence — Bad-Acts Evidence — Rules of Evidence.

The rule of evidence prescribing the grounds for admission of character or bad-acts evidence does not apply solely to criminal cases (MRE 404[b]).

10. Fraud — Actions — Bad-Acts Evidence.

Testimony of third parties in actions for fraud as to similar representations made to them by a defendant may be admissible if proximate to the act of fraud.

11. Witnesses — Examination of Witnesses — Cross-Examination — Bad-Acts Evidence.

A witness may not be examined or cross-examined regarding previous arrests or charges for crimes which did not result in a conviction.

12. Evidence — Relevancy — Rules of Evidence.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of an action more or less probable than it would be without the evidence (MRE 401).

13. Evidence — Bad-Acts Evidence — Cross-Examination.

A party is entitled to cross-examine an adversary regarding his prior criminal prosecutions and involvement in civil litigation which are contemporaneous with activities of the party which the adversary alleges caused him to suffer mental and emotional damage and which are relevant to a determination of the happenings which were likely to have contributed to the adversary's mental and emotional state during the time in question.

14. EVIDENCE — RELEVANCY — ADMISSIBILITY OF EVIDENCE — RULES OF EVIDENCE.

Relevant evidence may be excluded where its probative value is substantially outweighed by the danger of unfair prejudice (MRE 403).

15. EVIDENCE — WITNESSES — CREDIBILITY OF WITNESSES — PROOFS.

Proof of specific instances of the conduct of a witness for the purpose of attacking or supporting his credibility, other than conviction of a crime, may not be made by extrinsic evidence (MRE 608[b], 609).

16. DAMAGES — EXEMPLARY DAMAGES — ATTORNEY FEES — JUDICIAL DISCRETION.

Submission of the question of attorney fees to a jury as an item of exemplary damages is discretionary with the court.

17. DAMAGES — COSTS — ATTORNEY FEES — STATUTES.

Recovery of attorney fees generally is not allowed as an element of costs or as an item of damages unless expressly authorized by statute or court rule, and any exception to this doctrine should be narrowly construed.

18. DAMAGES — EXEMPLARY DAMAGES — COMMERCIAL CONTRACTS — MENTAL ANGUISH.

Exemplary damages are not recoverable for the breach of a commercial contract; the damages recoverable for such breach are those which arise naturally or those which reasonably can be said to have been in the contemplation of the parties at the time at which the contract was made, and, absent proof of such contemplation, compensation for mental anguish is not recoverable.

*Thomas H. Green Law Offices* (by *Michael J. Craw*), for plaintiff.

*Denenberg, Tuffley, Thorpe, Bocan & Patrick* (by *James C. Klemanski* and *Ilene Gordon*), for defendant.

Before: MACKENZIE, P.J., and BASHARA and D. C. RILEY, JJ.

MACKENZIE, P.J. Plaintiff instituted this action

against the defendant for the alleged unlawful enforcement of a warehouse lien. After a nine-day jury trial, judgment was rendered in the defendant's favor except for a reallocation of auction sale costs incurred by the defendant. Plaintiff appeals as of right.

Plaintiff Robert Scott filed an amended complaint on February 27, 1978, containing the following four counts:

I. Defendant breached a bailment contract of household goods approximating $50,000 in value;

II. The sale of plaintiff's goods was a breach of Uniform Commercial Code (UCC) § 7-210(2), MCL 440.7210(2); MSA 19.7210(2), the operable statute;

III. Defendant's wilful breach of the bailment contract amounted to conversion under UCC § 7-210(9), MCL 440.7210(9); MSA 19.7210(9), which entitled plaintiff to exemplary damages in the amount of $150,000 plus costs, interest, and actual attorney fees;

IV. Defendant's wilful, wanton, and reckless auctioning of household items entitled plaintiff to $10,000, plus costs, interest, and actual attorney fees, for mental anguish.

During the period of 1969 to August, 1975, plaintiff was an employee of the Ypsilanti division of Chumbley Chevrolet, Inc., an automobile dealership doing business in Ypsilanti and Ann Arbor. While he maintained his residence in Lansing, plaintiff stayed in an apartment in Ypsilanti during the week.

In early 1975, plaintiff became aware that the Chumbley dealership would be sold in the spring of that year. In February, 1975, plaintiff contacted the defendant, Hurd-Corrigan Moving & Storage Co., Inc., a commercial warehouse dealer, regarding storage of items kept in his Ypsilanti apart-

ment. On June 5, 1975, the plaintiff and the defendant entered into a bailment agreement for the storage of household goods and other personal property.

The plaintiff claimed that defendant's employee told him that no charges would have to be paid until the goods were removed from storage and that there would be no monthly storage charges. He stated that he never received any monthly statement of charges from defendant.

Plaintiff supplied the defendant with only one mailing address which was placed on defendant's ledger card as follows:

"Scott, Robert
c/o Chumbley Chevrolet, Inc.
1180 East Michigan Avenue
Ypsilanti, Michigan".

The Chumbley dealership was sold to Finley Webb on August 12, 1975, but Chumbley had a post office box until December, 1975. For one year after that time, Chumbley Chevrolet left a downtown Detroit forwarding address. After the goods were placed in storage, the plaintiff moved back to his home in Lansing.

Plaintiff testified that the next communication between himself and Hurd-Corrigan occurred in early 1977, when he called the defendant to obtain his goods out of storage. Plaintiff was told that the goods had been sold.

Employees of the defendant warehouse testified that storage charges were payable monthly and that a warehouse receipt, inventory sheet, invoice, and insurance policy were prepared by the defendant after the goods were placed in storage. Further testimony revealed that these items were mailed to the plaintiff in June, 1975, to the address on the ledger card. Since this original packet

of materials was never returned to defendant, it was assumed to have been delivered.

Paragraph ten of the warehouse receipt stated that payments were due one month from receipt of the document and each succeeding month in advance. Monthly statements of storage and insurance charges (amounting to $44) were sent to the address on the ledger card from June through December, 1975. Beginning in September, 1975, the unopened monthly statements were returned; accordingly, defendant stopped sending monthly statements after December, 1975.

A memo dated February 24, 1976, was mailed to the plaintiff addressed to: Robert Scott, c/o Chumbley Chevrolet, 1180 *West* Michigan, Ypsilanti, Michigan, informing him that his account had been delinquent since June 5, 1975. The memo stated that, if plaintiff did not reply within ten days, legal procedures would commence. A statement of charges that had accrued to that date was included with the memo. This communication was never returned to defendant, and plaintiff never responded to it.

A registered letter was then mailed to plaintiff on March 30, 1976. It was addressed to: Robert Scott, 1180 West Michigan Avenue, Ypsilanti, Michigan, rather than in care of Chumbley Chevrolet on *East* Michigan Avenue. Lillian Burbank, office manager of Hurd-Corrigan, testified that the reference to Chumbley Chevrolet was deliberately not included but that the substitution of "west" for "east" was a typographical error. This letter was returned, unopened, to the defendant.

Mary Ann Stokes, an employee of the Ypsilanti post office, testified that an attempt was made to deliver the registered letter at the East Michigan address since there was no such address on West

Michigan. A messenger from Finley Webb, Chumbley's successor, notified the post office on April 8, 1976, that the plaintiff was unknown to them, and this was noted on the envelope. Stokes testified that Chumbley Chevrolet had a forwarding address on file; had the letter been addressed to Robert Scott, c/o Chumbley Chevrolet, it would have been forwarded.

All of the plaintiff's items were sold at public auction, with gross receipts totalling $6,438. When Robert Scott called Hurd-Corrigan in early 1977 to obtain his bailed goods, he was offered $923, the amount of the auction sale in excess of the charges and expenses. Scott refused the money, told the manager of Hurd-Corrigan that the goods were valued in excess of $50,000, and commenced action.

Upon motion by the defendant, the trial court struck Count IV of the complaint, for mental anguish, due to the overlap between this count and the request for exemplary damages under Count III. Plaintiff moved for a directed verdict on the issue of liability, but his motion was denied. The jury awarded plaintiff $2,860, representing damages for defendant's breach of the contract for failing to sell the goods in conformity with commercially reasonable practices less defendant's costs in the preparation, moving, storage, and sale of the goods. No exemplary damages were awarded. The court amended the verdict by ordering defendant to pay costs to plaintiff. Plaintiff appeals as of right, raising the following issues.

I

Plaintiff first contends that the trial court erred in instructing the jury that UCC § 7-210(1) applied to the suit rather than UCC § 7-210(2). We agree.

A warehouseman has a lien against a bailor on goods covered by a warehouse receipt for charges, such as storage, transportation, insurance, labor, and any legally valid sale of such goods. UCC § 7-209, MCL 440.7209; MSA 19.7209. In order to enforce the lien, the UCC sets forth two separate procedures. The first, embodied in UCC § 7-210(1), applies to goods stored by a merchant in the course of his business. A merchant is defined in the following manner:

"a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill." MCL 440.2104(1); MSA 19.2104(1).

The requirements under UCC § 7-210(1) are relatively flexible since they are based on the overriding standard that the enforcement be "commercially reasonable". Subsection (1) reads as follows:

"Except as provided in subsection (2), a warehouseman's lien may be enforced by public or private sale of goods in bloc or in parcels, at any time or place and on any terms which are commercially reasonable, after notifying all persons known to claim an interest in the goods. Such notification must include a statement of the amount due, the nature of the proposed sale and the time and place of any public sale. The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the warehouseman is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the warehouseman either sells the goods in the usual manner in any recognized market therefor, or if he sells at the price current in such market at the

time of his sale, or if he has otherwise sold in conformity with commercially reasonable practices among dealers in the type of goods sold, he has sold in a commercially reasonable manner. A sale of more goods than apparently necessary to be offered to insure satisfaction of the obligation is not commercially reasonable except in cases covered by the preceding sentence."

The second enforcement procedure is set forth in UCC § 7-210(2), which pertains to goods other than goods stored by a merchant in the course of his business. The requirements are very strict and the language of this subsection is expressed in mandatory terminology. Subsection (2) provides that:

"A warehouseman's lien on goods other than goods stored by a merchant in the course of his business may be enforced only as follows:

"(a) All persons known to claim an interest in the goods must be notified.

"(b) The notification must be delivered in person or sent by registered or certified letter to the last known address of any person to be notified.

"(c) The notification must include an itemized statement of the claim, a description of the goods subject to the lien, a demand for payment within a specified time not less than 10 days after receipt of the notification, and a conspicuous statement that unless the claim is paid within that time the goods will be advertised for sale and sold by auction at a specified time and place.

"(d) The sale must conform to the terms of the notification.

"(e) The sale must be held at the nearest suitable place to that where the goods are held or stored.

"(f) After the expiration of the time given in the notification, an advertisement of the sale must be published once a week for 2 weeks consecutively in a newspaper of general circulation where the sale is to be held. The advertisement must include a description of the goods, the name of the person on whose account

they are being held, and the time and place of the sale. The sale must take place at least 15 days after the first publication. If there is no newspaper of general circulation where the sale is to be held, the advertisement must be posted at least 10 days before the sale in not less than 6 conspicuous places in the neighborhood of the proposed sale." MCL 440.7210(2); MSA 19.7210(2).

A decision as to which subsection should apply to a given set of facts is dependent upon whether the goods were stored for a merchant or a nonmerchant. As noted by the official comment to this provision:

"Subsection (1) makes 'commercial reasonableness' the standard for foreclosure proceedings in all cases except noncommercial storage with a warehouseman. The latter category embraces principally storage of household goods by private owners; and for such cases the detailed provisions as to notification, publication and public sale, found in Section 33 of the Uniform Warehouse Receipts Act, are retained in subsection (2). The swifter, more flexible procedure of subsection (1) is appropriate to commercial storage." MCL 440.7210; MSA 19.7210, Comment 1.

The focus, therefore, is on the bailor of the goods, not the bailee. We adopt the interpretation made explicit in the 1979 revision of the Practice Commentary by Dean Roy L. Steinheimer, Jr., 22 MCLA, 1980-81 Annual Supplement, pp 35-36, as follows:

"If the bailor is not a 'merchant' * * * storing the goods in the course of his business, the rigid procedures of subsection (2) must be followed. If the bailor is a merchant storing goods in ordinary course, the lien may be enforced under either subsection (1) or subsection (2). The term 'merchant' does not refer to the warehouseman."

In the instant case, the goods held by the warehouse were personal and household goods. Two witnesses for the defendant admitted that Robert Scott was not a merchant storing goods in the course of his business. Yet, the trial court, on two separate occasions, ruled that the more flexible provisions of subsection (1) were applicable and that the term "merchant" applied to the bailee.

These rulings by the trial court were erroneous since the determination of "merchant" within the provision is to be made with respect to the bailor alone. The court erred in applying subsection (1) in this case.

## II

Plaintiff next contends the trial court should have granted the plaintiff's motion for summary judgment on the issue of liability under UCC § 7-210(2).

On April 5, 1978, plaintiff moved for summary judgment on the issue of liability. While the exact subsection of GCR 1963, 117 was not stated in the motion, the appropriate grounds would have been that except as to damages, there is no genuine issue as to any material fact. GCR 1963, 117.2(3). In the complaint, plaintiff alleged that Hurd-Corrigan had failed to send the proper notice of possible resale as required under UCC § 7-210(2), that is, a registered letter to the last known address. The defendant had answered the plaintiff's allegations of liability under the UCC by stating that all notices had been mailed. However, none of the evidence offered in support of the defendant's defense of a legally-valid sale fulfilled the strict notice requirements of UCC § 7-210(2). Hurd-Corrigan asserted that the warehouse receipt, monthly statements, newspaper notice, letter of February

24, 1976, and an undelivered registered letter constituted sufficient notice under the statute.

The registered letter was addressed to: Mr. Robert Scott, 1180 West Michigan Ave., Ypsilanti, Michigan. The statute specifically requires that the registered letter be sent to the last known address. The last known address was printed on the defendant's ledger card as follows: Scott, Robert, c/o Chumbley Chevrolet, Inc., 1180 East Michigan Ave., Ypsilanti, Michigan.

The trial court denied plaintiff's motion for partial summary judgment on May 12, 1978; because subsection (2) of UCC § 7-210 was the applicable statute, the summary-judgment issue is dependent upon how strictly subsection (2) is to be applied. A review of case law in other jurisdictions is necessary for the proper construction of this provision. Since one of the purposes of the UCC is "to make uniform the law among the various jurisdictions", UCC § 1-102, MCL 440.1102; MSA 19.1102, the decisions of other states are persuasive authority in Michigan.

In *Flores v Didear Van & Storage Co, Inc,* 489 SW2d 406 (Tex Civ App, 1972), the plaintiff alleged that the defendant storage company had invalidly foreclosed a warehouse lien on plaintiff's household goods. Prior to the auction sale on May 18, 1968, the defendant sent a certified letter containing a notice of sale on April 17, 1968. The letter stated that the plaintiff had until April 24, 1968, to pay the amount owed. The bailor was given only six days after the earliest possible receipt of the letter to pay the storage company. The Court reversed the subsequent judgment in favor of the defendant, giving the following reasoning:

"A warehouseman has no personal remedy for selling

property for collection of charges at common law. His remedy lies by foreclosure as is provided by statutory law. The enforcement of such lien under summary foreclosure procedures, must be accomplished in strict compliance with the terms of the statute upon which such power is granted. * * * The letter notifying Flores of the impending sale failed to comply with the requirement of the code which says that ten days notice 'must' be given to the owner within which time he could pay for the goods. Since the notice was dated April 15, 1968, it would have been impossible to have given the plaintiffs the time specified by law by requiring them to pay 'on or before the 24th day of April.' Because the defendant failed to comply with the requirements of the statute, the sale is void." *Id.,* 409.

This strict interpretation of this provision of the UCC was also adopted by the Oklahoma Court of Appeals in *Kellenberger v Bob Meyers Moving & Storage Co, Inc,* 595 P2d 1229 (Okla App, 1979). Here, the defendant allowed only seven (not ten) days for payment, the advertisement was published eight (not ten) days after receipt of a notice, and the timing of the sale itself was also early. After emphasizing the strict notice requirements in subsection (2) and approving the language of the Texas court in *Flores, supra,* and *Kellenberger* court also reversed the judgment for the defendant and found the defendant's sale to have been improper and wrongful.

These decisions are based on both the mandatory language of the statute and scholarly commentary thereon. Subsection (2) provides that the lien "may be enforced *only* as follows". Every particular requirement includes the term "must". The rationale underlying the strict applicability of these requirements was expressed in White and Summers, Uniform Commercial Code, § 20-2, pp 669-670, as follows:

"Article Seven is unlike Article Two on sales and Article Nine on secured transactions where freedom of contract is the rule rather than the exception. The paucity of free contract under Article Seven can be readily explained. The Article deals with two ancient common callings, namely, storage and transport. Non-variable rules prevent storers and transporters from over-reaching their customers and from discriminating between them. Also, documents of title demand the certainty of nonvariable rules. Hence, some of the rules impose essentially nonvariable duties * * *."

In Michigan, the predecessor to Article Seven of the UCC was the Uniform Warehouse Receipts Act (UWRA). With respect to this earlier statute, the Michigan Supreme Court has stated that the statutory warehouse lien must be strictly construed. *Roehl Storage Co v Wilson,* 268 Mich 691, 696; 256 NW 598 (1934). The holding of the *Roehl* Court was cited in *Nikolas v Patrick,* 51 Mich App 561; 215 NW2d 715 (1974), where the appellant urged that UCC § 7-209, MCL 440.7209(3); MSA 19.7209(3), be interpreted broadly. Based on legislative intent, the ruling of the Supreme Court in *Roehl, supra,* and the holding of a similar case in another jurisdiction, this Court refused to accept the appellant's construction of the statute. Thus, in *Nikolas,* this Court relied upon the strict-construction language of *Roehl* in its interpretation of the UCC.

Based on the holdings of *Flores* and *Kellenberger,* we conclude that the plaintiff was entitled to summary judgment as a matter of law on the issue of liability. The defendant failed to comply with the explicit notice requirements of subsection (2). While this result may appear to be harsh, it is mandated by the explicit language of the UCC. Since the registered letter was not sent to the plaintiff's last known address, the notice was defec-

tive under the statute. There was no genuine issue of material fact with respect to the notices supplied by the defendant to support its defense. The notices were deficient as a matter of law, so that the plaintiff was entitled to judgment on this issue.

### III

Plaintiff next contends that the sale of his goods constituted conversion under the common law and as defined in UCC § 7-210(9), MCL 440.7210(9); MSA 19.7210(9), and that the trial court erred in denying his motion for a directed verdict that defendant was guilty of conversion. UCC § 7-210(9) provides as follows:

"The warehouseman is liable for damages caused by failure to comply with the requirements for sale under this section and in case of wilful violation is liable for conversion."

Plaintiff argues that the violation was wilful because of Lillian Burbank's testimony that she deliberately omitted "care of Chumbley Chevrolet" from the address to which she mailed the notice. This distinction between negligent violation and wilful violation is new according to the Practice Commentary of Dean Steinheimer. The witness did testify that the omission was intended; however, the record contains testimony that she knew from information in the newspapers that Chumbley Chevrolet was no longer in business at its former location and that she called several other Chevrolet dealers to see if plaintiff could be located. She testified she had called the successor dealership, Finley Webb, several times "at different intervals" to try to locate the plaintiff and was unable to get

any information as to his whereabouts, although she talked to several different people at the office. The record is devoid of any evidence of bad faith on the part of defendant or any showing that the alteration of the address was for the purpose of depriving the plaintiff of notice.

We find only one case that addresses the definition of "wilful" in this particular provision of the UCC. In *Long's Transfer & Storage v Busby,* 358 So 2d 393 (Miss, 1978), the warehouseman sent the plaintiff letters concerning the sale of plaintiff's goods. In the newspaper advertisements for the sale, the date of October 23, 1974, was published, although the sale actually took place on October 12, 1974. The uncontradicted testimony during trial established that the sale date in the advertisement was the result of clerical error by either the newspaper or the defendant's own office staff. There was no intent to deliberately publish an erroneous sale date.

On appeal, the Supreme Court of Mississippi construed the term "wilful". Since there was no prior case law directly on point, the court referred to prior definitions of "wilfulness" in other context and found the term to imply knowledge, intent, design, or deliberation. Mere mistake, carelessness, or inadvertence would be insufficient.

We agree, and hold that a wilful violation of UCC § 7-210, rendering one liable for conversion, implies a knowing, conscious noncompliance with the statute or a deliberate unwillingness to discover and obey the law.

We find that the trial court did not err in failing to enter a directed verdict in favor of plaintiff on the issue of conversion under the statute. We further find that the issue of common law conversion also was properly presented to the jury.

IV

Plaintiff contends that the trial court erred in allowing defense counsel to inquire of plaintiff, on cross-examination, whether he had been sued in a civil or criminal action prior to January, 1977. Plaintiff's testimony revealed that, while an employee of Chumbley Chevrolet, he was sued in a civil action by an insurance company and prosecuted criminally for two counts of obtaining money under false pretenses for his filing of three allegedly fraudulent insurance claims. Plaintiff testified that he was not convicted of the criminal charges.

Prior to admission of this testimony, plaintiff's counsel objected, and a hearing was held outside the presence of the jury. Defense counsel argued that the testimony was admissible on three grounds: (1) to show plaintiff's modus operandi or fradulent intent in filing the instant action, (2) to impeach plaintiff's credibility as a witness, and (3) to negate plaintiff's allegation that his mental distress damages were solely attributable to the wrongful sale of his furnishings by defendant. Since it is unclear under which theory the trial court allowed the cross-examination and since this issue is bound to recur on retrial, we will discuss each ground individually.

In arguing that the cross-examination was permissible to show plaintiff's modus operandi or fraudulent intent, essentially defendant is arguing that the evidence is admissible to prove plaintiff's fraudulent conduct herein, that plaintiff had received notice of his duty to pay storage fees and that his goods would be sold if he failed to do so, but that he deliberately did nothing until after they were sold so that he could recover damages exceeding the value of the goods. We note that

defendant has failed to plead sufficient facts alleging fraud as an affirmative defense as required by GCR 1963, 111.7.

Generally, character evidence is inadmissible to prove a party's conduct in a present action. MRE 404(a). Plaintiff argues on appeal that evidence of other bad acts is only admissible under the conditions set forth in MRE 404(b) which, by its language, limits its applicability to criminal cases. MRE 404(b) provides as follows:

"Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crime, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged."

We do not believe that the Michigan Supreme Court intended to limit the applicability of MRE 404(b) to criminal cases merely by including the phrase "whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged". In most civil actions, a party's "motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident" is not at issue.

This is not true of cases where fraud is alleged as a claim or defense. There, the alleged perpetrator's fraudulent intent and scheme or plan are at issue in proving the elements of the fraud. In *Birou v Thompson-Brown Co,* 67 Mich App 502, 512; 241 NW2d 265 (1976), this Court held that "[i]n fraud actions the testimony of third parties as

to similar representations made to them by a defendant may be admissible if proximate in time". Accord, *Mason v Vogue Knitting Corp,* 365 Mich 552, 558; 114 NW2d 154 (1962), *Gower v Wieser,* 269 Mich 6, 13-14; 256 NW 603 (1934). Thus, even in fraud cases, a party's similar misrepresentations have been admitted to show fraudulent intent or scheme or plan under the same test later embodied in MRE 404(b). See also FRE 404(b) which has not been limited to criminal cases.

Notwithstanding, the admission of plaintiff's alleged fraudulent insurance claims to prove his fraudulent intent or scheme or plan in the case at bar was erroneous for two reasons. As stated above, fraud was not properly pleaded as an affirmative defense. Additionally, even if defendant did allege sufficient facts to plead fraud, the insurance fraud was not similar enough to plaintiff's alleged fraudulent conduct herein to be material in showing either plaintiff's intent or plan. It was not shown that plaintiff made similar misrepresentations to the insurance companies or that he defrauded them by engaging in conduct similar to his conduct herein. Thus, the evidence was more unfairly prejudicial than probative and should not have been admitted under MRE 404(b).

Defendant also argues that the cross-examination was permissible for impeachment of plaintiff's credibility. MRE 608(b). We disagree. To the extent that the cross-examination exceeded the limited inquiry of filing fraudulent insurance claims but included references to prior criminal prosecutions, the nature of the charges, and whether they involved felonies or misdemeanors which did not result in conviction, we deem the questioning improper under MRE 608(b). *People v Falkner,* 389 Mich 682, 695; 209 NW2d 193 (1973). In *Falkner,* the Supreme Court stated:

"We hold that in the examination or cross-examination of any witness, no inquiry may be made regarding prior arrests or charges against such witness which did not result in conviction; neither may such witness be examined with reference to higher original charges which have not resulted in conviction, whether by plea or trial."

Plaintiff contends that *Falkner* prohibits any inquiry into prior arrests; but, subsequent cases construing this broad prohibition of *Falkner* have limited *Falkner's* scope to the use of prior arrests or charges against a witness for purposes of impeaching the witness's credibility. *People v Sanders,* 394 Mich 439, 440; 231 NW2d 639 (1975), *People v Rappuhn,* 390 Mich 266, 270-271; 212 NW2d 205 (1973). The inquiry concerning prior criminal prosecutions and the nature of the charges in the instant case was improper if used to impeach the plaintiff. The prohibition in *Falkner* would govern such an inquiry.

We now consider the merit of defendant's claim that the cross-examination was proper as relative to the issue of damages. MRE 401 defines relevant evidence as follows:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The plaintiff, in his quest for damages, attempted to demonstrate that the deprivation of his property caused him such mental anguish that he was unable to perform his job, resulting in dismissal from the job. He testified that the loss of his property caused him to be argumentative and more severe in dealing with his children and that his children could not sleep. He testified that he

became ill, had to stay in bed, was not interested in returning to work, lost interest in his wife and marriage, refused to visit his friends, and that he basically lost all contact with reality.

During the course of trial, the trial court struck plaintiff's claim for mental anguish but allowed the count for exemplary damages to stand. The court allowed the jury to consider whether plaintiff had suffered mental distress, stating:

"I am going to rule that in the event Defendant's conduct is found to be wrong that the Plaintiff may be entitled to recover damages based in contract, also in tort. I think the elements of exemplary damages include mainly the mental distress, and I don't want the jury confused by this extra count. The wording in the Ray case would allow compensatory damages for injury to feelings and for the sense of indignity and humiliation resulting from injury maliciously and wantonly inflicted. I think that would sufficiently allow for any mental damages that might be recoverable."

Defendant contends that two criminal prosecutions and a civil case stemming from plaintiff's alleged involvement in insurance fraud which were pending simultaneously with the instant case were relevant to plaintiff's emotional and mental condition. We agree that being subjected to charges of filing fraudulent insurance claims resulting in criminal prosecution and being a defendant in a civil suit are relevant to a person's emotional and mental state. Plaintiff brought his emotional and mental state into issue by his allegations that the acts of the defendant caused him to suffer the damages he claimed. We believe that the defendant is entitled to cross-examine plaintiff about contemporaneous happenings which were likely to have affected the quality of his life and likely to have contributed to many of the symp-

toms plaintiff attributed to defendant's wrongdoing.

We are mindful that, under MRE 403, relevant evidence may be excluded where its probative value is substantially outweighed by the danger of unfair prejudice. There is no doubt that the cross-examination was prejudicial and, but for its probative value on the damage issue under the facts of this case, we would not deem it admissible since the criminal prosecutions did not result in convictions.

V

Plaintiff claims that the trial court erred in admitting the testimony of a witness for the purpose of rebutting plaintiff's testimony on direct examination that he was only minimally involved in the perpetration of the allegedly fraudulent conduct. During cross-examination, plaintiff testified that he had not participated in the burglary of a busines machine, the loss of which was then reported to an insurance company. Plaintiff testified that, after being notified of losses by the managers of different departments, he had submitted claims for the losses to the insurance company. At the close of defendant's proofs, defendant sought to introduce the testimony of Donald Lange, a former co-worker of the plaintiff, concerning plaintiff's involvement in the burglary and subsequent allegedly fraudulent insurance claims. Counsel argued that the evidence was admissible to attack the credibility of plaintiff and to establish a pattern of fradulent conduct. The trial court permitted the inquiry.

When Lange refused to testify on Fifth Amendment grounds, defense counsel referred to Lange's prior testimony at plaintiff's criminal trial in or-

der to refresh his recollection. Defense counsel did not characterize the prior proceeding as criminal. Lange substantially adopted his prior testimony that Scott had instructed him to (1) place a business machine in a parked car, (2) throw a rock through a window, and (3) report a breaking and entering to the police.

MRE 608(b) provides that:

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence."

The language of this rule very clearly states that specific instances of conduct may not be proven by extrinsic evidence. In the instant case, the plaintiff denied his participation in the burglary. Defense counsel, as cross-examiner, was required to take the answer of the witness as given. Proof by extrinsic evidence is expressly precluded by MRE 608(b), and Lange's testimony, to the extent it was used to impeach the testimony of Robert Scott, was erroneously admitted. *People v Mitchell,* 402 Mich 506; 265 NW2d 163 (1978), *Bixby v Gallagher,* 43 Mich App 328; 204 NW2d 295 (1972). We have already determined that plaintiff's alleged insurance fraud was not sufficiently similar to his alleged fraudulent conduct herein to be admissible as similar-acts testimony under MRE 404(b).

## VI

Plaintiff further claims that the trial court erred in withholding from the jury the amount of attorney fees and other litigation expenses as an item of exemplary damages. We disagree. The motion to

have attorney fees submitted to the jury was renewed at the close of the presentation of evidence on the grounds that attorney fees are properly considered by the jury as an item of exemplary damages. The trial court correctly ruled that submission of the question of attorney fees to the jury is discretionary with the court and that, if the jury found there were exemplary damages, the court would then make a special finding on attorney fees.

As often stated by this Court, recovery of attorney fees generally is not allowed as an element of costs or as an item of damages unless expressly authorized by statute or court rule. *Salvador v Connor,* 87 Mich App 664; 276 NW2d 458 (1978), *State Farm Mutual Automobile Ins Co v Allen,* 50 Mich App 71, 74; 212 NW2d 821 (1973). In *G & D Co v Durand Milling Co, Inc,* 67 Mich App 253, 260; 240 NW2d 765 (1976), this Court expressed the view that any exception to the prevailing doctrine that attorney fees are not recoverable must be narrowly construed. The Court went on to delineate several exceptions as follows:

"[The rule that attorney's fees are recoverable] is intended to be applied where the party at fault is guilty of malicious, fraudulent or similar wrongful conduct, not of simple negligence as is claimed here. The few relevant cases in this jurisdiction bear out this distinction. *Oppenhuizen v Wennersten,* 2 Mich App 288; 139 NW2d 765 (1966) (fraud), *Fleischer v Buccilli,* 13 Mich App 135; 163 NW2d 637 (1968) ('unlawful acts', 'fraud and malice', at 139), and *State Farm Mutual Automobile Ins Co v Allen, supra* (fraud and forgery). The Restatement of the Law, Torts, § 914, in explaining the attorney's fee rule offers three examples, all concerning fraud."

The instant case does not fit within any of the

above-cited exceptions. There is no allegation of fraud, and, regardless of whether defendant's conduct may be considered to be wilful as defined by the UCC, there was no evidence of any malice. Testimony, such as that of Lillian Burbank, defendant's employee, indicated that no malice existed:

"Q. Did you intentionally sell Mr. Scott's goods in order to deprive him of his goods?

"A. Of course not.

"Q. What was the reason that you sold his goods?

"A. Because of the charges which were due.

"Q. Were there any other reasons?

"A. That was the only one.

"Q. You didn't bear any revenge against Mr. Scott or anything like that?

"A. No, I didn't know him."

Plaintiff's reliance on *Oppenhuizen v Wennersten,* 2 Mich App 288, 298; 139 NW2d 765 (1966), is misplaced. That case involved an action for fraud in which the defendant's conduct was characterized as having been carried out by "design and from wilful motives that infer malice". Since the case at bar involved the alleged conversion of plaintiff's property, absent the requisite malicious intention, *Oppenhuizen* is inapplicable here.

In deciding whether exemplary damages are awardable for breach of a commercial contract, we direct the trial judge's attention to *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401, 419; 295 NW2d 50 (1980), wherein Justice KAVANAGH restates the general rule that, absent proof of conversion, exemplary damages are not recoverable for the breach of a commercial contract "the mere breach of which does not give rise to a right to recover damages for mental distress". Rather,

the damages recoverable are those damages that arise naturally from the breach or which reasonably can be said to have been in contemplation of the parties at the time the contract was made. Absent proof of such contemplation, the damages recoverable do not include compensation for mental anguish.

The instant case differs from *Kewin* in that in the plaintiff's amended complaint, conversion under MCL 440.7210(9); MSA 19.7210(9) was pleaded. However, in the absence of a finding of proof of a wilful breach, no award of exemplary damages or damages for mental anguish would be proper.

In view of the fact that this case is to be remanded for retrial, we find it unnecessary to consider any remaining issues.

Reversed and remanded.