No. 31,847

THE ALLIS CHALMERS MANUFACTURING COMPANY, *Appellee,* v. THE SECURITY ELEVATOR COMPANY, *Appellant.*

(38 P. 2d 138)

Opinion filed December 8, 1934.

A. C. Malloy, Roy C. Davis, Warren H. White and Frank S. Hodge, all of Hutchinson, for the appellant.

*Austin M. Cowan, C. A. McCorkle, J. D. Fair, W. A. Kahrs* and *R. H. Nelson,* all of Wichita, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is an action for damages to recover for the conversion of wheat. Judgment was for plaintiff. Defendant appeals.

The wheat was sold to defendant by Mr. Booth, the man who raised it, in the summer and fall of 1931. In 1930 Mr. Booth planted about 1,200 acres of wheat. Part of the land sown he owned and part he rented. He gave the assignor of plaintiff a chattel mortgage on the crop to be planted on one quarter section. When he harvested his wheat in 1931 he hauled all of it from all his different farms to his home place and piled it on the ground in one pile. He sold 4,223 bushels to defendant and sold the rest to other parties. The chattel mortgage was duly recorded at the time of the sale. The petition alleged the facts about as they have been given here. The answer of defendant was a denial that it had any knowledge that the wheat it bought was mortgaged and a denial

that the wheat it bought was covered by any mortgage. The answer also alleged that before the wheat was bought by defendant the indebtedness from Booth to plaintiff had been settled. The reply denied the settlement. The action was tried by the court without a jury, and findings and judgment were in favor of plaintiff.

The first point argued by defendant is that the proof did not establish that the defendant purchased the mortgaged wheat. The basis of the argument is that the wheat in the pile was made up partly of wheat covered by the mortgage and partly of wheat not covered. No power on earth could tell the mortgaged wheat from the unmortgaged wheat once it was all piled together. The trouble about that argument is that plaintiff did not have this burden. It did prove that some wheat in the pile was mortgaged and that defendant had constructive notice of this mortgage on account of its being recorded. The rule is stated in 12 C. J. 496, as follows:

"The lien of a chattel mortgage is not impaired by a commingling of the goods mortgaged with other goods without the knowledge of the mortgagee, or by the sale of such commingled property to a third party with notice."

It would be manifestly unfair to hold that a farmer might free the wheat of a lien held by a third party by mingling it with wheat on which there was no lien. If this were held to be the rule then an unscrupulous debtor would never have his goods so that a chattel mortgage could be made effective. The corollary of this would be that no one would lend money on chattels which could be easily confused with other goods. Since this is true the next step is to inquire about the rights of third parties. In 12 C. J. 496 the following rule is stated:

"Purchasers with notice are, of course, in no better condition than their vendors in respect to a confusion of goods."

This rule has been followed in *Farmers Grain Co. v. Atchison, T. & S. F. Rly. Co.*, 121 Kan. 10, 245 Pac. 734. In that case several grain companies and a milling company had been held liable for conversion of a carload of wheat which they had sold without any right to do so. A rehearing was granted the milling company because it was stated in the opinion that the milling company had knowledge that the elevator companies did not own the wheat, when as a matter of fact the company had no such knowledge. The court, in an opinion on rehearing, adhered to its opinion holding the elevator liable. The court held that knowledge was not necessary to bind one who bought the wheat from one who did not own it. The court said:

"It is well settled that one who obtains the possession of property without the consent of the owner, or who buys it from a party who has no ownership or right to sell or dispose of it and thereafter asserts dominion over it or appropriates it to his own use, is liable for conversion, although he acted in good faith in the belief that the seller or party from whom he obtained possession owned the property and had the right to dispose of it." (p. 11.)

In 5 R. C. L., at page 440, the following rule is stated:

"Where a mortgagor of chattels mingles them, purposely or carelessly, with other goods not included within the mortgage, the mortgagee may replevy the whole mass from the purchaser, in the absence of evidence to distinguish the mortgaged goods from those not mortgaged."

In the case of *Hall v. Shaffer*, 131 Kan. 109, 289 Pac. 442, this court dealt with a question involving commingling of goods. There the action was to recover for the value of gas produced at a certain well. The court allowed judgment: It appeared that the gas from the well in question was measured by a meter through which gas from other wells also passed. The judgment was for the amount measured by this meter. When defendants objected to a judgment in such an amount this court said:

"This is a case for the application of the doctrine of the confusion of goods. As the defendants wrongfully mingled their gas with that of the plaintiffs, so that there was no way of distinguishing that of plaintiffs from the part belonging to defendants, this in a sense forfeits their interest. In 12 C. J. 491 the rule is stated:

" 'Where one fraudulently, willfully or wrongfully intermingles his goods with those of another, so that there is no evidence to distinguish the goods of the one from those of the other, the wrongdoer forfeits all his interest in the mixture to the other party. In other words, he cannot recover for his own proportion or for any part of the intermixture, but the entire property vests in him whose right is invaded.' " (p. 112.)

Following this well-established rule, we conclude that when Booth mingled the wheat that was not mortgaged with the wheat that was mortgaged he lost title to all the wheat as far as the holder of this mortgage was concerned. Since he thus lost title the defendant obtained no title when it bought the wheat from him.

The next point argued by defendant is that plaintiff is estopped from claiming any relief by reason of certain settlement negotiations. The facts with reference to this settlement were about as follows: A Mr. Mandeville, who represented the Wichita branch of plaintiff company, came to see Mr. Booth about his indebtedness some time after harvest, but before the wheat was sold. An arrangement was entered into whereby Booth gave Mandeville a check for $500 and a new mortgage on eighty acres of wheat to be

planted in the fall of 1931. This agreement was subject to the approval of the Wichita office. It was not approved and about two weeks later the check was sent back to Booth. Defendant argues that on this account the agent would be presumed to have knowledge of the commingling and should have taken steps to enforce the rights of plaintiff at that time. The argument is not good because the trial court found that what happened was only an offer to settle, and further found as follows:

"Nor did Mandeville have any knowledge that Booth intended to commingle the wheat prior to the time it was done. Mandeville was plaintiff's agent. He first discovered that this had been done just a few days prior to the time the first of the wheat was sold to the purchasers."

The next point argued by defendant is that the instrument relied on is not good because it is a mortgage on wheat yet to be planted. Defendant relies on the rule in this state on this matter. The trouble is that this is an Oklahoma transaction. The wheat was raised, the mortgage was given and the wheat was sold in Oklahoma. Oklahoma has a statute that permits the creating of a lien on property not yet in existence. (See Okla. Stat. 1931, § 10943.) This statute was interpreted and held to permit the giving of a chattel mortgage on a crop not planted at the time of the giving of the mortgage. (See *Eckles v. Ray & Lawyer*, 13 Okla. 541.)

The next point argued by defendant is that the plaintiff cannot recover because the cause of action is a tort and cannot be assigned. The conversion occurred in the fall of 1931. The mortgage was not assigned to plaintiff until March, 1932. The trial court recognized the rule that ordinarily a cause of action growing out of a tort is nonassignable, yet this case was decided under the authority of *Hewey v. Fouts*, 91 Kan. 680. That case allowed a recovery by the assignee of a tort on the theory that the person injured might elect to presume a promise on the part of the wrongdoer to pay to the party injured the full value of all benefits resulting to such wrongdoer. Recovery was only allowed in the amount that the estate of defendant was enriched by the buying of wheat. Defendant argues that plaintiff is only permitted to recover the amount of profit which the defendant made and contends that inasmuch as the defendant paid the full market price for the wheat to Booth there was no profit and can be no recovery. The true rule is that the measure of recovery is the value of the property. In this case the trial court calculated the amount of recovery allowed based on the relation

that the amount of wheat sold and the amount mortgaged have to the entire pile at twenty-four cents a bushel. No complaint is made about this computation.

The judgment of the trial court is affirmed.