(715 P.2d 1040)

No. 57,432

ROBERT OWEN, *Appellant*, v. B. R. TREADWELL *Defendant*, and JONES TRANSFER, *Appellee.*

—

Opinion filed March 20, 1986.

*Michael T. Halloran*, of Overland Park, for appellant.

*Robert F. Bailey*, of Wichita, for appellee.

Before REES, P.J., C. FRED LORENTZ, District Judge, assigned, and JOHN W. BROOKENS, District Judged Retired, assigned.

REES, J.: Plaintiff Robert Owen appeals from an order of summary judgment in favor of defendant Jones Transfer on Owen's claim for damages for conversion of property Jones Transfer sold to enforce a warehouseman's lien. Owen contends there exist genuine issues of material fact precluding entry of summary judgment on the issue of Jones Transfer's compliance with the statutory procedures of K.S.A. 84-7-210 for enforcement of a warehouseman's lien. We reverse.

Owen is a former tenant of defendant B. R. Treadwell, not a party on appeal. Jones Transfer is a warehouse operating in Wichita, Kansas. The facts are uncontroverted.

On July 29, 1981, Treadwell filed a petition in Sedgwick County District Court seeking to evict Owen from his property in Goddard, Kansas, for nonpayment of rent. Owen did not answer and on August 10 Treadwell secured a default judgment. Pursuant to a writ of restitution and execution, the validity of which is not questioned, the Sedgwick County Sheriff restored Treadwell to possession of his property. The Sheriff also employed Jones Transfer to remove all property on August 17, 1981, except property the Sheriff "deemed junk and unfeasible to move." The

property removed by Jones Transfer included a stereo, bed, tools, kitchen appliances, dishes, clothing, and so on.

Owen did not attempt to contact Treadwell or the Sheriff to discover where his property was. He asserts that because of lack of funds he had moved to Independence, Missouri, with his parents. In any event, three months after the property was seized, on October 14, 1981, Jones Transfer mailed by certified letter to Owen's last known address (the Goddard address), the following "Notice of Warehouseman's Lien":

"This is to notify you that Jones Storage & Moving, Inc. as shown by the itemized statement attached hereto, claims a warehouseman's lien on all of the goods shown in and on the list of goods attached hereto. That is if payment of said lien is not paid within 14 days after date of this notice, the goods will be advertised for sale and sold by auction at the Broadway Auction, 2753 N. Broadway, Wichita, Kansas commencing at 7:00 PM on November 21, 1981."

The letter was returned, marked "moved and left no address."

Needless to say, Owen did not pay the storage charges within the 14 days specified by the notice. On November 6, 7 and 13, 1981, Jones Transfer published a legal notice in the Daily Record:

"Notice is hereby given that Jones Storage & Moving, Inc. will offer for sale and sell at public auction, under the provisions of the Kansas Uniform Commercial Code, any and all of the household items of personalty, described on the inventories accompanying the bills of lading being held at its direction for the account of the shipper's listed below to satisfy its carrier's lien. Public auction sale will begin at 7:00 p.m. o'clock on November 21, 1981, and will continue thereafter until all of said items are sold, at Broadway Auction, 2753 N. Broadway, Wichita, Kansas."

Owen's name was listed thereunder as one of forty-five "shippers."

On November 21, 1981, a public auction was held. Owen's property was sold to individual unnamed buyers for a total of $635.50. Less commission, Jones Transfer netted $508.40 to partially satisfy a three-month storage bill of $545.63.

One year later, on December 15, 1982, Owen filed this action against Treadwell and Jones Transfer, alleging "intentional fraudulent eviction" against Treadwell and conversion against Jones Transfer. Owen later settled with Treadwell and he was dismissed from the suit. Jones Transfer then moved for summary judgment, reciting its strict compliance with the Uniform Commercial Code (UCC) procedures for enforcing a warehouseman's

lien. The motion was supported by an affidavit from the president of Jones Transfer in which he stated that his company had removed Owen's property "in a good workmanlike manner and acted in good faith."

Owen opposed the motion on four grounds, contending material issues of genuine fact remained: (1) whether the notice Jones Transfer sent to him properly described and itemized the goods subject to the lien; (2) whether Jones Transfer acted in good faith in describing the goods in the published notice as "household items of personalty"; (3) whether Jones Transfer sold more property than reasonably necessary to satisfy the lien; and (4) whether Jones Transfer used good faith in trying to notify Owen of its lien. The memorandum in opposition to the motion was supported by Owen's affidavit, in which he stated he had no notice of Jones Transfer's lien; that Jones Transfer sold more property than reasonably necessary to satisfy the lien; and that "all actions of Jones Transfer were not performed in good faith." He also attached his answer to an interrogatory propounded by Treadwell, in which he valued the subject property at the time he purchased it as worth $18,000.

After a hearing, the district court orally found that "the requirement of good faith is present from the affidavit [of Jones Transfer's president] and from the statements of counsel"; that, as Owen conceded, Jones Transfer did not intentionally harm Owen; that there was no "requirement that Jones [Transfer] get out and gumshoe around to see if he could find [Owen]"; that "household items of personalty . . . covers tools and a stereo"; and "that the requirements of the Uniform Commercial Code have been satisfied." He thus sustained Jones Transfer's motion and entered summary judgment.

On appeal, Owen contends the district court erred in finding as a matter of law that (1) Jones Transfer did not sell more goods than apparently necessary to insure satisfaction of its lien; (2) the description "household items of personalty" sufficiently described Owen's property; and (3) Jones Transfer sold Owen's property in a commercially reasonable manner.

No warehouseman's lien existed at common law. The statute creating the lien, K.S.A. 84-7-209(1), grants a statutory lien to the warehouseman *against the bailor*

"on the goods covered by a warehouse receipt or on the proceeds thereof in his

possession for charges for storage or transportation . . ., insurance, labor, or charges present or future in relation to the goods, and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law."

Subsection (3)(b) of that statute extends the lien covering household goods *as against all persons*, "if the *depositor* was the legal possessor of the goods at the time of deposit." (Emphasis added.) "Household goods" is further defined as "furniture, furnishings and personal effects used by the *depositor* in a dwelling." (Emphasis added.) K.S.A. 84-7-209(3)(b).

K.S.A. 84-7-210(1) delimits the procedure the warehouseman must follow to enforce the lien. K.S.A. 84-7-210(1) provides:

"(1)    *Except as provided in subsection (2)*, a warehouseman's lien may be enforced by public or private sale of the goods in block or in parcels, at any time or place and on any terms which are commercially reasonable, after notifying all persons known to claim an interest in the goods. Such notification must include a statement of the amount due, the nature of the proposed sale and the time and place of any public sale. The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the warehouseman is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the warehouseman either sells the goods in the usual manner in any recognized market therefor, or if he sells at the price current in such market at the time of his sale, or if he has otherwise sold in conformity with commercially reasonable practices among dealers in the type of goods sold, he has sold in a commercially reasonable manner. A sale of more goods than apparently necessary to be offered to insure satisfaction of the obligation is not commercially reasonable except in cases covered by the preceding sentence." (Emphasis added.)

## And K.S.A. 84-7-210(2) provides:

"(2)    A warehouseman's lien on goods other than goods stored by a merchant in the course of his business may be enforced only as follows:

"(a)    All persons known to claim an interest in the goods must be notified.

"(b)    The notification must be delivered in person or sent by registered or certified letter to the last known address of any person to be notified.

"(c)    The notification must include an itemized statement of the claim, a description of the goods subject to the lien, a demand for payment within a specified time not less than ten days after receipt of the notification, and a conspicuous statement that unless the claim is paid within that time the goods will be advertised for sale and sold by auction at a specified time and place.

"(d)    The sale must conform to the terms of the notification.

"(e)    The sale must be held at the nearest suitable place to that where the goods are held or stored.

"(f)    After the expiration of the time given in the notification, an advertisement of the sale must be published once a week for two weeks consecutively in a newspaper of general circulation where the sale is to be held. The advertisement must include a description of the goods, the name of the person on whose account

they are being held, and the time and place of the sale. The sale must take place at least fifteen days after the first publication. If there is no newspaper of general circulation where the sale is to be held, the advertisement must be posted at least ten days before the sale in not less than six conspicuous places in the neighborhood of the proposed sale."

Before discussing the merits, there are several threshold issues that at least must be raised. First, we observe that there may exist an issue whether Jones Transfer acquired a valid warehouseman's lien; specifically, whether the sheriff was the "legal possessor" of Owen's goods at the time he deposited them with Jones Transfer. See, *e.g.*, Att'y Gen. Op. No. 85-177. However, since the parties have not addressed the issue and since resolution of the raised issues leads to the same result—reversal of summary judgment—we decline to discuss it.

Second, we must consider what standard of compliance K.S.A. 84-7-210(2) demands.

The official UCC and Kansas Comments to K.S.A. 84-7-210(1) and (2) explain that subsection (1) applies when goods have been stored by a merchant in the course of his business, and that its swifter, more flexible procedures and standard of commercial reasonableness are more appropriate to commercial storage. In contrast, subsection (2) embraces principally storage of household goods by private owners, and sets forth more detailed provisions as to notification, publication and public sale. These comments give us cause to consider whether each subsection utilizes its own standard and what those standards are. To our best knowledge, all courts that have decided the issue have determined that, in contrast to subsection (1)'s commercial reasonableness standard, subsection (2) requires strict and literal compliance with its provisions on the part of the warehouseman, by virtue of that subsection's language:

"(2)   A warehouseman's lien on goods other than goods stored by a merchant in the course of his business may be enforced *only* as follows: . . ." (Emphasis added.)

See *Scott v. Hurd-Corrigan Co.*, 103 Mich. App. 322, 302 N.W.2d 867, 30 U.C.C. Rep. Ser. 1649 (1981); *Hughes v. Accredited Movers, Inc.*, 190 N.J. Super. 71, 461 A.2d 1203, 36 U.C.C. Rep. Ser. 938 (1983); *Poole v. Christian,* 64 Ohio Misc. 32, 411 N.E.2d 513 (1980); *Kellenberger v. Bob Meyers Moving & Storage,* 595 P.2d 1229, 1231, 26 U.C.C. Rep. Ser. 484 (Okla. App. 1979); *Flores v. Didear Van & Storage Company, Inc.,* 489

S.W.2d 406, 408, 12 U.C.C. Rep. Ser. 168 (Tex. Civ. App. 1972). *Cf.* subsection (1): "[A] warehouseman's lien *may* be enforced." (Emphasis added.)

The reason for § 7-210(2)'s strict requirements is that "[n]onvariable rules prevent storers and transporters from overreaching their customers and from discriminating between them." *Kellenberger v. Bob Meyers Moving & Storage*, 595 P.2d at 1232; *Bradford v. Muinzer*, 498 F. Supp. 1384 (N.D. Ill. 1980); see also White & Summers, Uniform Commercial Code § 20-2 (2d ed. 1980). We find this rationale persuasive. We therefore hold that K.S.A. 84-7-210(2) requires strict compliance on the part of the warehouseman seeking to enforce its statutory lien covering household goods.

Finally, there is a third threshold issue tangentially raised by the parties: Do the K.S.A. 84-7-210(1) standards of commercial reasonableness also apply to K.S.A. 84-7-210(2)?

Although the language of both the Comments and of the statute itself ("Except as provided in subsection (2) . . .") suggest that the provisions of (1) and (2) are mutually exclusive, the only judicial decision we have found on the issue held that the "commercial reasonableness" standard of subsection (1) governs *all* sales of goods subject to a warehouseman's lien except to the extent that subsection (2) imposes stricter or additional requirements on a warehouseman's selling of a nonmerchant's goods. *Bradford v. Muinzer*, 498 F. Supp. at 1389. The *Bradford* court compared other UCC provisions making a distinction between merchants and nonmerchants, and noted that:

"When other UCC provisions apply only to merchants, the provisions so state explicitly rather than by inference. See, *e.g.*, UCC section 2-205, section 2-603 . . . . [And considering the purpose of section 7-210(2) to prevent overreaching], it seems highly unlikely that the requirement that a sale be commercially reasonable is applicable to sales of merchants' goods but inapplicable to sales of nonmerchants' goods." 498 F. Supp. at 1389.

We find that this rationale makes good sense. Since this was a storage of household goods, we therefore conclude that for Jones Transfer to succeed in this suit, it must have complied with both the detailed standards of subsection (2) and with the more amorphous standard of commercial reasonableness set forth in subsection (1), except to the extent subsection (2) imposes stricter or additional requirements.

That said, we have reviewed the record and find it was error

for the trial court to hold as a matter of law that Jones Transfer complied with all statutory requirements for enforcing its lien. Without even reaching the issues raised by Owen, we find there exist issues whether Jones Transfer's notice of lien included (1) "a *conspicuous* statement that unless the claim is paid within that time the goods will be advertised for sale" (see 84-1-201[10]); and (2) an "itemized statement of the claim." K.S.A. 84-7-210(2). (Emphasis added.)

Unable to find as a matter of law that Jones Transfer strictly complied with the procedures for enforcing a warehouseman's lien, we must reverse the summary judgment.

Reversed.