(211 P.3d 179)
No. 100,399

GRACE ELAINE SNIDER, INDIVIDUALLY; and GRACE ELAINE SNIDER, TRUSTEE of the GRACE ELAINE SNIDER TRUST #1, *Appellant*, v. MIDFIRST BANK; DONALD L. ROLISON; and SAFEGUARD PROPERTIES, INC., *Appellees*.

Opinion filed July 10, 2009.

*Dennis R. Davidson*, of Thompson, Arthur & Davidson, of Russell, for appellant.

*Travis L. Salmon*, of Shughart Thomson & Kilroy, P.C., of Kansas City, Missouri, for appellee Safeguard Properties, Inc.

*Kurt M. Lewis*, of South & Associates, P.C., of Overland Park, for appellee MidFirst Bank.

*William I. Heydman*, of Heydman Kliewer, LLP, of Garden City, for appellee Donald L. Rolison.

Before GREENE, P.J., PIERRON and GREEN, JJ.

GREENE, J.: Grace Elaine Snider (Snider), individually and as trustee of the Grace Elaine Snider Trust #1, appeals the district court's summary judgment against her on claims of conversion against MidFirst Bank and Safeguard Properties, Inc. She also appeals the district court's dismissal of defendant Donald L. Rolison on the same claims. On appeal, she argues the court erred in concluding that she was not the real party in interest to prosecute conversion claims as to personal property assigned to her by her son, Clifford, and that the court erred in not allowing a reasonable time for joinder of her son. She also argues the court erred in concluding that summary judgment against her was proper. We essentially agree with Snider on most of her claims of error, affirm the district court in part, reverse the district court in part, and remand for further proceedings.

## *Factual and Procedural Background*

In 1995, Snider and her son executed and delivered a note and real estate mortgage in the amount of $42,350 on residential real property located at 335 South Central, Dighton, Kansas. MidFirst became the owner and holder of the note and mortgage. On July 25, 2003, the Sniders were formally served with process on MidFirst's foreclosure action at their home in Healy, Kansas. On October 22, 2003, the district court entered a journal entry of judgment of foreclosure in favor of MidFirst. MidFirst purchased the property in a foreclosure sale on December 4, 2003, and the redemption period was set for 3 months.

After the 3-month redemption period, on March 24, 2004, MidFirst sent a letter to the Sniders at the Dighton address notifying them that they must vacate the premise immediately or eviction proceedings would commence. At this time, MidFirst also filed a request to issue a writ of assistance with the court. A copy of the request to issue a writ of assistance was posted to the front door of 335 South Central in Dighton. On April 2, 2004, the court entered a writ of assistance to the Sheriff of Lane County. The writ ordered that "any personal property of the defendants or any other persons occupying the premises shall be inventoried by you and turned over to the Plaintiff for removal and storage." The only

"service" of the writ on the Sniders was first class mailing to the Dighton address.

MidFirst hired Safeguard to assist the sheriff with the eviction. Safeguard, in turn, engaged Donald Rolison (Rolison) to assist with the eviction. On April 12, 2004, Rolison took possession of the personal property based on the writ of assistance issued by the district court. Rolison's wife and the sheriff inventoried items in the property, and based on Rolison's valuations, the property remaining in the home was estimated to be worth approximately $3,000. Rolison advised the sheriff that if anyone inquired about the personal property, the sheriff should advise them to contact MidFirst or Safeguard. Rolison left a card with a neighbor consistent with standard company procedure.

Rolison transported the items and stored them in his storage facility near Wichita. During the storage period, Rolison sent a letter to the Sniders at the Dighton address, attempting to advise them of the whereabouts of remaining personal property. The letter stated that if no one heard from them within 30 days after April 12, 2004, the stored items would be deemed abandoned and would be dispersed at Rolison's company's discretion. Rolison testified that he always sent a letter to the "last known address" of the mortgagor similar to the one he sent the Sniders, but no such letter was posted or otherwise served at the Healy address, even though MidFirst was aware that this was the Sniders' last known address. Rolison did not publish notice that he would be selling the Sniders' property after 30 days.

After the property was removed, Grace Snider did not attempt to contact MidFirst or its attorneys to ascertain where the personal property had been taken. She called the sheriff, but he advised her (erroneously) that he did not know who took the property. A Safeguard work order indicated that Snider's son called to retrieve the personal property on May 19, 2004, and that a call was placed with the "rep that stored them to see if he still has them as the 30 days was up on May 12, 2004." Rolison testified that by the time he was advised of Snider's son making inquiry about the property, it was already sold in a sale described by Rolison as a garage sale or yard

sale. Rolison was not present at the sale but testified that he ended up with $500 from the sale.

On April 10, 2006, Snider, individually and as trustee of the Grace Elaine Snider Trust #1, filed a suit against MidFirst Bank and Donald Rolison, alleging that defendants converted plaintiffs' personal property by selling the property, taking the property for defendants' own use, or otherwise disposing of said property and that $60,000 in damages were sustained. Safeguard Properties was subsequently joined as a necessary party. On April 18, 2006, Clifford Snider executed an assignment of his personal property and his claims for conversion to his mother. The assignment purported to be effective March 31, 2006, but was signed by him on April 18, 2006.

On November 1, 2007, Safeguard and MidFirst filed separate summary judgment motions. Both defendants argued that the claims should be dismissed because plaintiffs had failed to establish the elements of conversion and plaintiffs were not the real parties in interest to bring the conversion claim. The district court heard oral arguments from all parties on December 5, 2007. On March 3, 2008, the district court entered a memorandum decision and order, granting Safeguard's and MidFirst's summary judgment motions, finding: (1) Snider individually and Grace Elaine Snider as trustee of the Grace Elaine Snider Trust #1 were not the real parties in interest because the tort action of conversion was not assignable from her son; and (2) no genuine issue as to a material fact existed with respect to the conversion claim, and defendants were entitled to judgment as a matter of law. Claims against Rolison were subsequently dismissed by the court for the same reasons. Plaintiffs timely appeal.

### Did the District Court Err in Concluding Snider was not the Real Party in Interest to Prosecute Claims for Conversion of Property Previously Owned by Her Son?

Snider initially argues the district court erred in concluding that she was not the real party in interest to prosecute conversion claims as to property assigned to her by her son. Snider purportedly ac-

quired both her son's property and his claims of conversion by virtue of an assignment to her executed just after the filing of Snider's action. The assignment provided:

"[A]ll of my right title and interest in and to all of my household goods, furniture and furnishings, guns, collectibles, and other tangible personal property of every kind and nature formerly situated in my residence at 335 South Central, Dighton, Kansas, together will all claims or causes of action that I have or may have against MidFirst Bank, Oklahoma City, Oklahoma, and Donald L. Rolison, Derby, Kansas, and any other person, arising out of the conversion of said tangible personal property."

The document further stated:

"I appoint Grace Elaine Snider, her personal representatives and assigns, my true and lawful attorney-in-fact, irrevocably, with full power of substitution, for me and in my name or otherwise, but for the sole and use and benefit of Assignee, Grace Elaine Snider, to demand, sue for, compromise, collect and give satisfaction for such claims."

The district court held the assignment was ineffective to convey Clifford's claims for conversion, reasoning:

"In Kansas, all choses in action, except torts are assignable. *Boltz v. State Farm Mutual Automobile Insurance Co.*, 274 Kan. 420 (2002). Conversion is the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights. Under Kansas law, conversion is a strict liability tort. The required intent is shown by the use or disposition of property belonging to another. [Citation omitted.]

"Case law authority cited in support of Plaintiff's argument that a claim of conversion may be assigned is inapplicable to the facts of this action, and does not authorize deviation from the general rule of non-assignment of tort claims."

Snider argues that assignment of a conversion claim has been endorsed in at least two Kansas cases, *Bouchey v. Gillilan*, 138 Kan. 404, 26 P.2d 451 (1933), and *Allis Chalmers Mfg. Co. v. Security Elev. Co.*, 140 Kan. 580, 38 P.2d 138 (1934). We disagree. In *Bouchey*, the court simply refused to classify the plaintiff's claim as sounding in tort, and in *Allis Chalmers*, the court found an implied contract "to pay to the party injured the full value of all benefits resulting to such wrongdoer." 140 Kan. at 583. Like the district court, we decline to rely on either of these cases in determining assignability of conversion claims.

Here, there were no allegations of an implied contract or bailment; Snider's claim was clearly and exclusively pled as one of conversion, and intentional tort claims are simply not assignable in Kansas. See *Star Mfg. Co., Inc. v. Mancuso*, 680 F. Supp. 1496, 1499 (D. Kan. 1988) (no exception to general rule that tort claims are not assignable even where tortfeasor has benefitted from the wrongdoing).

We conclude the district court did not err in holding that Snider was not the real party in interest to prosecute conversion claims as to Clifford's property. Clearly, however, she had standing to prosecute such claims with regard to her own property and that of the Trust.

### Did the District Court Err in Failing to Allow a Reasonable Time for Joinder of the Real Party In Interest?

Snider also claims that if she was not the real party in interest to prosecute conversion claims as to Clifford's property, the district court erred in granting summary judgment against her and terminating the case without allowing a reasonable time to join the real party in interest. This claim has merit.

K.S.A. 60-217 provides:

"Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, conservator, trustee of an express trust, receiver, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in the party's own name without joining the party for whose benefit the action is brought. When a statute so provides, an action for the use or benefit of another shall be brought in the name of the state of Kansas. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

It is clear from the record that the district court never considered this statutory mandate to allow a reasonable time for joinder before dismissing Snider's action. Appellees emphasize, however, that

Snider never brought this mandate to the district court's attention or otherwise sought to join Clifford.

Although the failure to seek joinder might normally be fatal to such a claim on appeal, we conclude that a motion for joinder or ratification here would have been futile given the district court's contemporaneous entry of summary judgment on the merits of the conversion claim. *KPERS v. Reimer & Koger Assoc., Inc.*, 262 Kan. 635, 643, 941 P.2d 1321 (1997) (" 'A construction of a statute should be avoided which would render the application of a statute . . . which would require the performance of a vain, idle, or futile thing, or attempt to require the performance of an impossible act.' "). The district court considered both the real party in interest issue and the merits of the action in a single order. Having concluded that Snider's conversion claim failed on its merits, there was no reason to believe that a similar claim by Clifford might succeed, and there was certainly no practical reason to join him given that Snider's conversion claims had been terminated subject only to appeal.

Under these special circumstances, we conclude that Snider had no practical opportunity to seek joinder below, and we must remand for compliance with the statutory mandate for joinder of the real party in interest.

### Did the District Court Err
### in Applying the Law to the Uncontroverted Facts
### and Granting Summary Judgment Against Snider's Claims
### of Conversion?

Snider argues that the district court erred in granting judgment against her as a matter of law based upon her failure to make demand for return of the property. She argues:

"[T]he court below in its memorandum decision, found that the uncontroverted facts established that no defendant ever received a demand for return of the personal property prior to its disposal. The court, therefore, apparently concluded that Mrs. Snider could not establish that the disposal of her property was unauthorized. It is respectfully submitted that the court's conclusion was in error. A logical result of such a rule would be that a person, having obtained lawful possession of another's property, would be free to sell it so long as they did so before the owner had an opportunity to make a demand for return of the property. Here,

Rolison took possession of the property and stored it in his facility more than 200 miles away from Dighton, Kansas. No effort was made to notify the owner of the whereabouts of the property, other than to mail a letter by regular mail to the address of the vacant house from which the property was removed. This was done notwithstanding the fact that MidFirst Bank's attorneys knew the residence address of both Mrs. Snider and her son in Healy, Kansas. Under these circumstances and the rule of law set forth in *Schooley v. Kerr* [139 Kan. 669, 33 P.2d 140 (1934)], Mrs. Snider was entitled to maintain her cause of action for conversion, notwithstanding her failure to discover who had possession of her property and where it was located and, therefore, her failure to make demand for its return before it was given away and sold."

We agree. Indeed, it appears the district court decided that Snider failed to establish her conversion claim because notice was given her by appellees or their agents and she never demanded a return of the personal property before it was sold. According to the district court:

"The record and uncontroverted facts further reflect the posting of information by Defendant MidFirst on the door following Sheriff's Sale, the leaving of a business card by Rolison with a neighbor of the residence in question with contact information for said Defendant, and a letter by Defendant Rolison in April of 2004 to Clifford Dee Snider at the address of the residence advising that the personal property would be disposed of at the discretion of Rolison unless objection or contact was made within 30 days of April 14, 2004. The mailing was never returned for lack of delivery.

. . . .

"From the record, the uncontroverted facts establish no Defendant ever received a demand for return of the personal property prior to disposal. No objection to possession of the property by Defendant Rolison was made prior to disposal. Plaintiff has failed to establish, even by examining the facts in a light most favorable to Plaintiff that the exercise of ownership of the subject personal property was unauthorized. Defendant is therefore entitled to summary judgment on Plaintiff's conversion claim."

The district court's reliance on the various notices and the Sniders' subsequent failure to inquire about their property is rather curious. The record clearly shows that these "facts" proposed by appellees to support their summary judgment motion were fully controverted by Snider. Specifically, the appellees' proposed facts that these notices were all sent or posted at Snider's last place of address were controverted by Snider as follows:

"Controverted. The Sniders' last known address was not 336 South Central, Dighton, Kansas. The Sniders' last known address was 221 North Ike Road, Healy, Kansas 67850. . . . Letter was mailed to the residence Rolison knew to be vacant and was not the last known address of the Sniders."

With regard to Snider's subsequent failure to make inquiry, this was controverted as follows:

"Snider testified that she talked to the sheriff to try to find out the location of the property and that he would not give her any answers. She testified that she did not know who else to go to."

These controversions appear to be supported by citations to the record, as required by Rule 141 (2008 Kan. Ct. R. Annot 222). Moreover, Snider set forth additional uncontroverted facts including the following:

"2. After obtaining the writ of assistance and employing Safeguard Properties, Inc., to remove the Sniders' property, MidFirst Bank made no effort whatsoever to contact the Sniders about removal of the property.

"3. After obtaining the writ of assistance and employing Safeguard Properties, Inc., to remove the property, MidFirst Bank made no effort whatsoever to determine if notice was given to the Sniders regarding removal of their property.

"4. After obtaining the writ of assistance and employing Safeguard Properties, Inc., to remove the property, MidFirst Bank made no effort whatsoever to find out what had been done with the property after its removal.

. . . .

"7. After obtaining the writ of assistance and employing Safeguard Properties, Inc., to remove the property, MidFirst Bank made no effort whatsoever to cause the property to be delivered to MidFirst Bank *as directed in the writ*.

"8. After obtaining the writ of assistance and employing Safeguard Properties, Inc., to remove the property, MidFirst Bank made no effort whatsoever to discover what happened to the property after it was stored."

In Safeguard's reply, these facts were controverted only to the extent that the facts asserted that Safeguard was employed by MidFirst. For all five of the additional facts, Safeguard maintained that Safeguard was an independent contractor for MidFirst. In MidFirst's reply, it attempted to controvert the additional facts by asserting that the facts misstated the deposition testimony of Patricia Anglin, an employee of Midland Mortgage Company which is a wholly owned subsidiary of MidFirst. The record, however, reflects no such misstatements. MidFirst merely argued that An-

glin's testimony was not reliable because matters regarding the personal property after removal were to be taken care of by MidFirst's attorneys and Safeguard. We conclude that this argument without further factual support did not effectively controvert Snider's additional facts. See Rule 141.

Additionally, counsel for appellees admitted in oral argument before this court that when the Sniders made more than one inquiry of the sheriff regarding the whereabouts of their property, the sheriff knew full well the details about where it was located and in whose possession it was, but he concealed these facts from the Sniders, apparently based on some local lore about Snider's son's propensity for an angry or violent reaction.

All things considered, the uncontroverted facts, when viewed in the light most favorable to Snider, do not establish that any of the notices given were effective. Moreover, it is clear that the notices were given at an address known to be vacant and not the last know address of the Sniders. Although not argued below or on appeal, we also note that service of the notices does not comply with Kansas law; the writ of assistance was not served in compliance with K.S.A. 60-303, and the Rolison letter was clearly not in compliance with the requirements for a warehouseman to give notice before sale or disposition of property in his or her possession under K.S.A. 84-7-210(b). Such defective notices, known to be defective by appellees when given (inasmuch as they or at least some of them were clearly possessed with the Sniders' last known address), and the Sniders' inaction thereafter, should not have been the basis for summary judgment against Snider.

We agree with the district court that no liability of appellees can be established by reason of their actions pursuant to the writ of assistance. But the authority of that writ clearly terminated with storage; *there was no authorization for sale of property seized*. The Restatement includes a claim for conversion when a person makes use of chattel beyond that which is authorized. Restatement (Second) of Torts § 228 (1965) provides:

"One who is authorized to make a particular use of a chattel, and uses it in a manner exceeding the authorization, is subject to liability for conversion to another whose right to control the use of the chattel is thereby seriously violated."

Although neither party has cited the case, *Owen v. Treadwell,* 11 Kan. App. 2d 127, 715 P.2d 1040 (1986), is instructive in determining the applicability of K.S.A. 84-7-209 and K.S.A. 84-7-210 in this context. Owen appealed from a summary judgment against him on Owen's conversion claim regarding property that was sold to enforce a warehouseman's lien after defective notice to Owen. On appeal, this court agreed with Owen and found that it was unable, as a matter of law, to find that there was strict compliance with the procedures to enforce a warehouseman's lien. 11 Kan. App. 2d at 133.

Although the applicability of K.S.A. 84-7-209 and K.S.A. 84-7-210 in determining the scope of Rolison's authorization was not raised by either party in district court, there are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal. The exceptions include the following: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *Smith v. Yell Bell Taxi, Inc.,* 276 Kan. 305, 311, 75 P.3d 1222 (2003).

We conclude the second exception justifies our consideration of Rolison's compliance with statutory requirements applicable to warehousemen both on appeal and on remand. As demonstrated by *Owen,* the requirements of K.S.A. 84-7-209 and K.S.A. 84-7-210 require resolution of fact issues and preclude summary judgment under these circumstances. The application of these statutes, as construed and applied in *Owen,* is necessary to serve the ends of justice here and will provide a legal paradigm for the district court on remand. The entry of summary judgment by the district court was erroneous both due to the existence of genuine issues of material fact and due to the inadequacy of uncontroverted facts to support the court's conclusion of law.

We remand for further proceedings not inconsistent with this opinion, to include a reasonable time for joinder of the real parties

in interest, and for proceedings consistent with the opinion of this court in *Owen* and the law of warehousemen's liens, K.S.A. 84-7-209 and K.S.A. 84-7-210.

Affirmed in part, reversed in part, and remanded with directions.